UNITED STATES, Appellee

v

PAUL F. WELCH, Private First Class,
U. S. Army, Appellant

19 USCMA 134, 41 CMR 134

No. 22,103

December 19, 1969

*Captain Bernard J. Casey* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Captain Thomas R. Maher,* and *Captain Eugene W. Murphy, Jr.*

*Captain Richard K. Bank* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger, Major William A. Pope, II,* and *Captain William R. Steinmetz.*

## Opinion of the Court

DARDEN, Judge:

Though the accused entered a plea of not guilty to wrongfully possessing marihuana and to two specifications of failing to obey a lawful order, in violation of Articles 134 and 92, Uniform Code of Military Justice, 10 USC §§ 934 and 892, respectively, a general court-martial convicted him as charged and imposed a sentence of dishonorable discharge, confinement at hard labor for eighteen months, and forfeiture of $100.00 per month for the same period. The convening authority's approval was followed by a board of review action that found Welch's marihuana conviction "incorrect in law." That body ordered the charge dismissed and the sentence reduced to confinement at hard labor for six months and forfeiture of $60.00 pay per month for the same period.

This Court granted review on the question of whether the law officer erred to the accused's prejudice by not suppressing the introduction of marihuana cigarettes and a switchblade knife seized in the search of a saddlebag attached to the accused's motorcycle. The board of review's action obviously disposes of one portion of this issue.

During the early morning hours of April 22, 1968, a two-man Military Police cruising patrol at Fort Hood, Texas, confronted motorcyclists riding three abreast down one of the post's avenues, in violation of the post traffic code. Intending to "cite" the three for their manner of riding and to check the cycle registrations—for none had post registration decals—the MPs ordered the riders to the curb. Two, including the accused, complied. The third continued on his way, the MPs in pursuit. As the chase ended, the accused and his companion fled in the opposite direction. The former was ultimately apprehended in a barracks area; the motorcycle rested in a ditch. The accused was placed under apprehension for having failed to stop as ordered and for not having the required post registration decal.

The motorcycle and an attached black "AWOL" bag, placed in a police van that had been called to the scene, were taken to the Provost Marshal's office. The accused was removed in a patrol car. On arrival the heavy motorcycle was left in the locked van; the bag was taken inside to the patrol supervisor's office to be inventoried.

Military policemen are responsible for property receipts listing all detained property whether acquired by search and seizure, confiscations, impoundings, or otherwise. Property with questioned ownership was similarly treated. It was the police custodian's responsibility to guard such property against loss, theft, pilferage, damage, alteration, or unauthorized change in value, or appearance. Normally, a traffic citation did not result in detention of property, but because of the accused's arrest and custody and the refusal to answer when asked whether he owned the cycle the above regulations became operative.[1]

As a consequence, among the items removed from the black bag and itemized were two shaving kits and a switchblade knife. Carrying of the latter is prohibited by post regulation.[2]

[1] Army Regulations 190–45 and 190–22.

[2] Fort Hood Regulation 210–40, paragraph 7–03.

The marihuana cigarettes were discovered in one of the two shaving kits carried in the larger bag.

For the defense, the accused testified that he was unaware of the post traffic regulations, that he carried a black bag attached to his vehicle, and that on outings it was used by everyone in his group. Moreover, on the weekend in question, he had been in the company of two companions and had stayed at a house visited by ten others, all of whom had access to the bag. He declared that the cigarettes were not his, that he was unaware of their presence in the bag, and that the shaving kit was owned by a companion named Gary Hawk. When Hawk testified, he refused to say that the kit was his or that he had placed it in the travel bag. Because of this testimony, the board of review disapproved and dismissed the marihuana conviction, since it was not satisfied beyond a reasonable doubt that the accused knew of the presence of marihuana in the bag.

In United States v Kazmierczak, 16 USCMA 594, 601, 37 CMR 214, this Court determined that administrative inventories prescribed by regulation are "not *per se* contrary to the constitutional prohibition against unreasonable search and seizure." Within the constitutionally permissible sphere are those inventories whose purpose is to secure the "safekeeping" of personal effects if they are not used as a subterfuge to effect an illegal search. We are not convinced that the recent Supreme Court decisions of Camara v Municipal Court, 387 US 523, 18 L Ed 2d 930, 87 S Ct 1727 (1967), or See v Seattle, 387 US 541, 18 L Ed 2d 943, 87 S Ct 1737 (1967), require that this fundamental precept be upset. The Supreme Court cases hold that the Fourth Amendment bars prosecution of persons who refuse to permit a "warrantless" municipal code enforcement inspection—in one instance by the Department of Public Health and in the other the Fire Department—of either private dwellings or commercial structures. Now, as before, the test remains one of reasonableness.

In addition to the inherent differences that exist between such inspections and vehicle searches (cf. Preston v United States, 376 US 364, 11 L Ed 2d 777, 84 S Ct 881 (1964); Chimel v California, 395 US 752, 23 L Ed 2d 685, 89 S Ct 2034 (1969)), "[t]ime and circumstance may require a balance to be struck at one point in the civilian community, but at another in the military." United States v Kazmierczak, supra, at page 600. Compared with the one in *Kazmierczak*, the regulation here is no less legitimate, either as to purpose or as to need. Police intervention in this instance assures the return of all property taken and placed in custody, and, at the same time, affords protection to the custodian against unwarranted charges of malfeasance. Whether in barracks or station house, human frailties remain the same, and the need of protecting personal property is as necessary in the latter as it is in the former.

In this instance we believe the regulations have not been subtly misused. Welch was not the recipient of a "normal" traffic citation. Instead of obeying the order to halt, he fled. When he was apprehended, his recalcitrance did little to minimize the seriousness of the confrontation. Lack of a registration decal on the cycle and his refusal to acknowledge ownership of the vehicle intensified the doubts about the character of his conduct. The record is clear that, for more serious traffic violations, detention of the offender was the usual result.

At the time of the accused's arrest the registration office was closed, and, although a decal was found in his wallet, it was one that was usable on both motorcycles and automobiles. Mere possession meant little or nothing. That the accused was taken into custody and to the station house appears reasonable.

The MPs believed the inventory mandatory because of Welch's failure to claim ownership of the cycle. Had the accused admitted ownership the

property ordinarily would not have been detained.

In short, in the situation confronting them, had the military police acted other than as they did, dereliction of duty could have been the result. We have no reason to believe the inventory was but a search in disguise. Authorities were not searching for criminal offenders. No crimes had been reported to the authorities. The acts for which accused was detained, do not, of themselves, engender need for a search other than a search of the person for identification or weapons. Incriminating evidence was foreign and unnecessary to the case against the accused as it then existed. Not until the subsequent discoveries was the Criminal Investigations Detachment called. We are satisfied that, under these circumstances, the military police acted in good faith in undertaking the inventory.

Police inventory practices are not peculiar to the military. We are reminded that in the civilian community the same procedures are in evidence. There, too, property is similarly treated for identical reasons. The procedure is, in substance, a common and acceptable one. Cotton v United States, 371 F2d 385 (CA9th Cir) (1967); State v Darabcsek, 412 SW2d 97 (Mo) (1967). For these reasons, we affirm the decision of the board of review.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

My brothers' affirmance of this case is based, in the main, on this Court's opinion in United States v Kazmierczak, 16 USCMA 594, 37 CMR 214,[1] and the fact that they find the military police acted in good faith in undertaking a post-arrest inventory of the accused's property. Not only do I find Kazmierczak, in which I dissented, distinguishable from this case, but good faith on the part of the police is not the test for determining whether an accused's rights under the Fourth Amendment to the Constitution have been violated. Henry v United States, 361 US 98, 102, 4 L Ed 2d 134, 80 S Ct 168 (1959); United States v Garlich, 15 USCMA 362, 370, 35 CMR 334.

The accused and two unnamed individuals, each riding a motorcycle, were observed by military police Sergeant Hill and his patrol partner traveling three abreast on a road on the base. This was against base traffic regulations. Sergeant Hill also noticed that none of the bikes displayed a post registration. At the orders of Sergeant Hill, the accused and one of the men stopped their motorcycles while the third continued on with the MPs in pursuit. When the latter was stopped some two hundred feet away, the accused and his companion fled in the opposite direction. The accused was pursued and apprehended approximately one-half mile away. The motorcycle had gone into a ditch and the accused was caught attempting to run away. He was immediately searched and then transported to the provost marshal's office in the patrol car. His motorcycle and a black bag attached thereto were transported to the office in a patrol van. On arrival, the cycle was left in the locked van and the bag was taken into the patrol supervisor's office. Examination of the contents of the bag revealed the presence, among other things, of a switchblade knife. At trial, the defense motion for suppression of this evidence, on the ground that it was secured by an illegal search, was denied by the law officer. We granted review on the question of whether the law officer erred in denying the motion.

---

[1] The prosecution at trial, in an out-of-court hearing on the admissibility of the evidence (Appellate Exhibit 1, page 53), argued that since an inventory not a search was conducted, Kazmierczak was dispositive of the issue. The board of review, in its opinion, held that "The issue that is squarely before us is the same that confronted the Court in United States v Kazmierczak, supra."

The Government alleges that the examination of the bag was authorized under appropriate Army Regulations[2] which provide for the *inventory* of property of an individual who is to be detained, or, if the individual is to be released and the property detained, the same inventory must be conducted.[3] In this case, the Government argues that the motorcycle and bag could not be released to the appellant because he did not show or even claim ownership.

I find the Government's contentions exceedingly strange, especially in light of the testimony at trial. Sergeant Hill testified, at the out-of-court hearing, that he thought the property in accused's possession, the bag and the motorcycle, belonged to the accused. In addition, he revealed that if a man is apprehended for the traffic violations charged against the accused, his vehicle and the property therein are not impounded. Hill was unaware of any reports of stolen motorcycles.

Sergeant Anderson, who, along with Sergeant Boyle, brought the motorcycle and the bag to the station and there examined the contents of the bag, did so with the permission of Sergeant Hill. Sergeant Boyle found the switchblade in one of the two shaving kits which were in the bag.

Sergeant Doeden, the Military Police Desk Sergeant, also told the court that a man is not detained for committing the traffic offenses charged against the accused and his personal property is not inventoried or detained. A traffic offender is cited for the offense and released, or at most escorted to his unit. In cross-examination, Sergeant Doeden testified that he was on duty on the night accused was arrested and as desk sergeant he normally makes the determination whether property is to be detained or kept from the person in any way. He was then asked the following questions by defense counsel:

"Q Did you make a determination that this property was going to be detained?
"A After it had been inventoried, yes.

"Q Before it had been inventoried?
"A Not before it had been inventoried.

"Q No determination that this property was going to be impounded, confiscated, detained or anything else?
"A No, sir, because we didn't know for sure to whom it belonged. If it belonged to the person we thought it did, it would have been released with the owner, or it would be detained."

Doeden did not ask the accused if the property was his but believed that the accused had denied ownership to Sergeant Hill. But Hill testified that when he questioned the accused as to the ownership of the motorcycle and the bag, "He did not say anything, sir." A vehicle registration decal was found in the accused's wallet. Later inquiry revealed that it applied to the motorcycle.

In United States v Kazmierczak, supra, a majority of this Court upheld the right of the military to inventory the personal effects of a serviceman, when the latter has been confined, in order to protect them. Evidence found therein was held to be admissible.

Although I dissented in *Kazmierczak*, I, nevertheless, find it distinguishable from the case at bar on two grounds. First, Kazmierczak was in confinement at the time[4] and, second, *the*

---

[2] AR 190–22 and AR 190–45.
[3] Despite numerous references to an inventory and to the number of the form to be used for this purpose, I am unable to find either the original or a copy thereof in the record or in the allied papers.
[4] While the accused in this case was taken to the station house, he apparently was not confined, for the allied papers disclosed that he was on duty later that day (April 22, 1968). The charge sheet reflects that he was restricted to the company area on April 26, 1968, and placed in pretrial confinement the following day.

*decision to conduct the inventory was made by the squadron commander and not by the arresting officers.* The latter of these two grounds is the more important. In *Kazmierczak,* the majority cited Frank v Maryland, 359 US 360, 3 L Ed 2d 877, 79 S Ct 804 (1959), as authority for its holding that "there are occasions when the individual's right of privacy yields to the Government's right to perform a proper public function." But Frank v Maryland, supra, was specifically overruled on the basis of the more important of the two issues which I find distinguishes this case from *Kazmierczak.* Camara v Municipal Court, 387 US 523, 18 L Ed 2d 930, 87 S Ct 1727 (1967); See v Seattle, 387 US 541, 18 L Ed 2d 943, 87 S Ct 1737 (1967).

In *Frank,* supra, the Supreme Court upheld a state court conviction of a homeowner who refused to permit a municipal health inspector to enter and inspect his premises *without a search warrant,* where the inspection, required by an ordinance, was made to determine whether the city health code was being violated. In the subsequent cases of *Camara* and *See,* the Court, as noted, specifically overruled *Frank* "to the extent that it sanctioned such warrantless inspections." *Camara,* 387 US, at page 528. After discussing at length the Fourth Amendment prohibition against searches and seizures without a warrant and the prosecution's argument that the public interest demands and justifies warrantless administrative searches, the Court held, in *Camara,* 387 US, at page 534:

> "In summary, we hold that administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment, that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual, and that the reasons put forth in Frank v Maryland and in other cases for upholding these warrantless searches are insufficient to justify so substantial a weakening of the Fourth Amendment's protections."

My brothers do not believe that the decisions in *Camara* and *See* require a different result or view of the basic principle in *Kazmierczak.* They state that "Now, as before, the test remains one of reasonableness." But a search of private property at another time and place than that of the arrest does not "meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible." Preston v United States, 376 US 364, 368, 11 L Ed 2d 777, 781, 84 S Ct 881 (1964). In its most recent pronouncement on the *reasonableness* of a search without a warrant, the Supreme Court, in Chimel v California, 395 US 752, 768, 23 L Ed 2d 685, 89 S Ct 2034 (1969), held as "'unreasonable' under the Fourth and Fourteenth Amendments," a search without a warrant whose scope went beyond that of the arrested person and the area from which he might have obtained either a weapon or something that could have been used as evidence against him.

We cannot, by labeling what happened here an inventory, avoid the application of the Fourth Amendment protection against warrantless searches and seizures. The effect is the same. The failure of the accused to acknowledge ownership of the motorcycle or the bag is no excuse for *searching* or *inventorying* the latter without a warrant. He had a constitutional right to silence and his assertion of that right is not a bar to a later claim of unlawful search. See Jones v United States, 362 US 257, 4 L Ed 2d 697, 80 S Ct 725, 78 ALR2d 233 (1960). Nor is the good faith of the officers in conducting the inventory in accord with regulations sufficient to disregard constitutional principles. United States v Allah, USDC, Texas, 5 Criminal Law Reporter 2462 (1969); Henry v United States, supra. The law requires that the decision must be made by a disinterested magistrate and *he may grant such authority not indiscrim-*

*inately but only upon a showing of probable cause.* McDonald v United States, 335 US 451, 93 L Ed 153, 69 S Ct 191 (1948) ; Chimel v California; Camara v Municipal Court; and See v Seattle, all supra. Cf. Terry v Ohio, 392 US 1, 20 L Ed 2d 889, 88 S Ct 1868 (1968), with Sibron v New York, 392 US 40, 20 L Ed 2d 917, 88 S Ct 1889 (1968).

In short, I believe that my brothers err grievously in affirming what I believe to be a clear violation of constitutional principles. I would reverse the accused's conviction for the possession of a switchblade knife in violation of a lawful order (Charge II, specification 1) and order the specification dismissed. I would return the case to the Court of Military Review for reassessment of the sentence on the basis of the remaining finding of guilty.