UNITED STATES, Appellee

v

ERLE S. GRACE, Airman First Class,
U. S. Air Force, Appellant

19 USCMA 409, 42 CMR 11

No. 22,502

May 8, 1970

*Colonel Bertram Jacobson* argued the cause for Appellant, Accused. With him on the brief was *Major Frank T. Moniz.*

*Major Donald B. Strickland* argued the cause for Appellee, United States. With him on the brief was *Colonel James M. Bumgarner.*

## Opinion of the Court

QUINN, Chief Judge:

A special court-martial convened in Thailand convicted the accused of wrongful possession of marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, and imposed a sentence extending to a bad-conduct discharge. On this appeal, the accused contends, as he had at trial and on intermediate review, that the evidence as to his possession of marihuana was inadmissible because it was the product of an illegal search.

The marihuana was found in the accused's locker. The accused contends the examination of the locker in his billet was a search predicated upon suspicion and was, therefore, illegal. United States v Lange, 15 USCMA 486, 35 CMR 458 (1965). The Government maintains that discovery of the marihuana was incident to a "shakedown inspection" ordered for the safety and security of the unit, and its seizure was, therefore, legal. United States v Harman, 12 USCMA 180, 30 CMR 180 (1961). The parties are in substantial agreement as to the operative facts and, as noted in the accused's brief, they join "issue . . . on the law alone."

Captain Paul Aehnlich, Commander, Security Police Squadron, U-Tapao Airfield, ordered an inspection of the squadron area and its three barracks "to check living conditions" and to determine whether unauthorized weapons were present. The accused concedes that the order was within the Captain's authority and that the inspection was legal in its inception. See United States v Gebhart, 10 USCMA 606, 28 CMR 172 (1959). However, he contends that circumstances arose in the course of the inspection which transformed the proceedings into "a subterfuge" for an illegal search of his personal effects. See United States v

**410**

Welch, 19 USCMA 134, 41 CMR 134 (1969).

Personnel of the squadron worked on different shifts. As a result, the inspection began in the quarters of those who were off duty but present in the squadron area. Operating in two-man teams, senior noncommissioned officers conducted the inspection. Master Sergeant Earl Redmond and Master Sergeant Childress were assigned to the barracks in which the accused was billeted. His quarters were on the first floor.

Redmond and Childress began the inspection on the third floor. When they had finished on that floor, they joined other inspectors on the first floor. It was then "just before lunch." A person, unidentified in the record, approached Redmond and "whispered" that the accused had marihuana in his locker. Redmond "didn't know if he was telling the truth." When the occupants on the first floor, including the accused, "came from duty," inspection of the quarters on the first floor began. Redmond was examining a locker in the accused's area, when the accused "walked in the room" and opened his locker. Redmond noticed that the accused "took something out of" the locker. He directed the accused to return the article to his locker, and to "wait a second" so that he could finish inspecting the locker he had been examining when the accused entered. The accused complied, but when Redmond told him he was "ready to inspect his locker," the accused questioned Redmond's authority to do so.

Redmond told the accused of Captain Aehnlich's order. He also advised Technical Sergeant Marlin Clark, who was one of the inspectors and the non-commissioned officer in charge of the security section, of the information he had received as to the accused's pos-

session of marihuana and that the accused challenged the inspection. Clark immediately informed the accused of his right to remain silent and his right to counsel. When the accused requested counsel, Clark told him he was "under apprehension"; thereupon, he, Redmond, and the accused, went to the legal office. There the accused talked to "someone." Concurrently, Redmond talked to Captain Aehnlich. He apprised him of the communication he had received regarding the accused's alleged possession of marihuana, and of the accused's conduct in regard to the inspection. Captain Aehnlich, who did not believe he had authority to order a search, conferred with a legal officer. He then instructed Redmond to complete the inspection, as originally directed. Redmond, Clark, and the accused returned to the barracks, and the accused opened his locker for inspection. Examination of the locker revealed the marihuana.

Two strands of alleged illegality in the proceedings appear in the accused's argument. The substance of the first is that the evidence, especially the conference between Captain Aehnlich and the staff legal officer, compels the conclusion that Captain Aehnlich ordered continuation of the inspection as a "subterfuge" to effect a search of the accused's locker. The question was considered by the intermediate appellate authorities. They determined that the evidence supported the conclusion that the inspection retained its original purpose and validity after Captain Aehnlich's conference with the staff legal officer, and that the examination of the accused's locker was, therefore, proper. The Court of Military Review remarked that the Captain only "reconfirmed the legality" of his original order of inspection. The accused's insistence on the insufficiency of probable cause to search supports the conclusion. If there was so little reason for a search, as maintained by the accused, there was no reason to defer the inspection. Clark's action in apprehending the accused was precipitous and improper, but it had no apparent influence on Captain Aehnlich's decision to complete the inspection. In our opinion, the record amply supports the conclusion that completion of the inspection was not a sham intended to circumvent the requirements for a lawful search.

The second strand of accused's argument is that "once . . . [he] became a suspect, the inspection became a search as to him." While not pressed to its outer limits, the argument contemplates that a shakedown inspection cannot include persons suspected of the commission of an offense. United States v Lange, supra, is urged as authority for that proposition. In *Lange,* the necessity for an inspection was conceived but no proceedings were initiated; a considerable time later, and only after learning of the commission of an offense, the commander directed that the effects of all personnel of the unit be examined. This Court determined that, under the circumstances, the proceedings amounted to a general, exploratory search. However, the Court specially pointed out that the evidence did not disclose a situation involving an inspection "that had been already scheduled at the time the administrative officer received the report" of a suspected crime. *Id.,* at page 490. Here, the inspection was not merely scheduled, but in full progress, when Captain Aehnlich was informed of the whispered accusation against the accused and of the accused's questioning of the right to inspect. An inspection valid at inception is not transformed into an illegal proceeding simply because one of the persons subject to inspection becomes the subject of a criminal investigation. Suspicion of involvement in misconduct may perhaps bring about an impermissible expansion of the scope of the inspection, but we are not confronted with that question. The record indicates that the examination of the accused's locker was no more extensive than the examination of the other lockers. On the evidence, therefore, the inspection did not become an illegal search of the accused's effects.

The decision of the United States Air Force Court of Military Review is affirmed.

Judges FERGUSON and DARDEN concur.