**UNITED STATES, Appellant,**

v.

**Michael A. MILLER, Private First Class, U. S. Army, Appellee.**

**No. 30,158.**

U. S. Court of Military Appeals.

March 26, 1976.

*Lieutenant Colonel Donald W. Hansen* and *Major Steven M. Werner* were on the pleadings for Appellant, United States.

*Lieutenant Colonel James Kucera, Captain Michael R. Caryl,* and *Captain John M. Nolan* were on the pleadings for Appellee, Accused.

OPINION OF THE COURT

PER CURIAM:

For the reasons set out in the opinion of the U. S. Army Court of Military Review in this case,[1] the three questions certified to this Court by the Acting Judge Advocate General of the Army are answered in the affirmative. In so doing, we adopt[2] the development and the analysis of that court in resolving these issues.

The decision of the United States Army Court of Military Review is affirmed.

Judge PERRY did not participate in the decision of this case.

---

1. *United States v. Miller,* 50 C.M.R. 303 (ACMR 1975).

2. We concur in the opinion below with two caveats: (1) That court's statement:
"If such other access [than through the appellant's room] had been available [to the air conditioning duct] and used, we would have no hesitancy in finding the appellant had neither an expectation of privacy, nor, because of his trespass into the duct, a protected property interest." *United States v. Miller, supra* at 306. (2) Part III of that court's opinion which addressed the factual insufficiency of the evidence to support the convictions for sales of marihuana, which matter properly was reviewed by that court under Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866, but which is not within our province under Article 67, UCMJ, 10 U.S.C. § 867.

COOK, Judge (dissenting):

Concluding that evidence of marihuana admitted against the accused at his trial had been obtained in an illegal search of accused's room, the U. S. Army Court of Military Review set aside his conviction for wrongful possession and sale of the substance, and dismissed all the charges. 50 C.M.R. 303 (ACMR 1975). The Acting Judge Advocate General of the Army certified three questions as to the correctness of different determinations of the court which led it to its final decision.

On August 28, 1973, Captain Lambright, Commanding Officer of Headquarters and Headquarters Battery, The Air Defense Artillery Training Brigade, Fort Bliss, Texas, decided to conduct an unannounced health and welfare inspection of the unit. Accompanying him on the inspection were Lieutenant Saybe, "from the legal office," an "MPI [military police investigator]," and a dog of demonstrated ability to detect marihuana with its handler. When the inspection party entered the accused's room the dog alerted at a point along the east wall, which was opposite, and somewhat to the right of, the doorway. A "little heater" element, covered by a metal plate, was set in this wall. No marihuana was found at the site, and, after examining the room, the group left.[1] About a half-hour later, while the inspection was still in progress in the barracks, Lieutenant Saybe advised the captain that he had been informed by telephone, by Specialist Six Davis, who also worked "in a legal office," that "Miller had marihuana in the wall of his room."

The inspection party returned to the accused's room. Again, the dog alerted at the east wall; and again nothing was found there. Turning to the west wall, which on its other side was a wall of the barracks hallway, Captain Lambright saw a framed area, with a plywood covering measuring about 30 by 30 inches. The cover was over an opening in the wall that provided access to an air-conditioning duct; it was large enough for "a person . . . [to] get inside of it." The duct opening impressed the captain as "the only place that . . . could fulfill" the information he had received. Consequently, he removed the cover, and examined the area inside the wall. About "one foot" within the duct, to the lower, left-hand side of the opening, "wedged within" a little metal plate at the bottom of the duct, he found 14 plastic bags, which later were determined to contain marihuana.

At a time that "might have been during" the second visit to the accused's room, Captain Lambright learned that Specialist Six Davis had obtained the information he had reported to Lieutenant Saybe from another person "in the legal office," a Private Sanisteven. He made no inquiry as to the reliability of either Davis or Sanisteven, and he did not ask how Sanisteven had acquired his information. Responding to a question by defense counsel, he admitted he "probably" would not have returned to the accused's room had Saybe not advised him of the report that marihuana was "in the wall" of the accused's room.

Lambright's description of the air-conditioning duct supports an inference that the only access to it was through the opening in the accused's room. Apparently, the Court of Military Review drew that inference, although it stated it a little more restrictively. The court said: "The duct could not be physically entered from a hallway or from some other common area." 50 C.M.R. at 306.

Opposing a defense motion to suppress evidence of the discovery of the marihuana in the wall, trial counsel advanced three bases for admissibility. First, he argued that both entries into the accused's room were part of Captain Lambright's health and welfare inspection, which he could carry out, without having probable cause to believe that evidence of a crime would be discovered in the room. *See United States v. Grace*, 19 U.S.C.M.A. 409, 42 C.M.R. 11

---

1. A plastic pipe, containing a residue believed to be marihuana, was found in a desk. At trial, defense counsel affirmatively indicated he had no objection to the admission of this article into evidence. *See United States v. Hendrix*, 21 U.S.C.M.A. 412, 45 C.M.R. 186 (1972).

(1970); *cf. United States v. Lange*, 15 U.S. C.M.A. 486, 35 C.M.R. 458 (1965). Secondly, he maintained that if probable cause was required, Captain Lambright had knowledge of sufficient facts to justify his actions. Thirdly, counsel contended the accused had no standing to object to the examination of the air-conditioning duct because he had no interest in, and no reasonable expectation of privacy to, the interior part of the walls of his room. All three grounds were disputed by defense counsel. The trial judge found that the place at which the marihuana was discovered was not within "the area of the room assigned for the accused's use," and, therefore, the accused had "no expectation of privacy for materials deposited" in the duct. On those findings, he denied the defense motion to suppress. The Court of Military Review overturned the ruling, reasoning as follows:[2]

> We disagree with the military judge's ruling on the suppression motion and with the Government's contention that appellant had no standing. We find the appellant did have standing to object under either the expectation of privacy theory or under the property theory. We view the duct to be an integral part of appellant's room and we believe appellant could reasonably expect freedom from intrusion into the duct through the room. This expectation of freedom from intrusion would be the same as could be expected in a room without a duct, viz., the Government could only enter the room to inspect the condition of the room or duct, or to perform maintenance or repair work, or for some similar purpose. The duct could not be physically entered from a hallway or from some other common area. If such other access had been available and used, we would have no hesitancy in finding the appellant had neither an expectation of privacy, nor, because of his trespass into the duct, a protected property interest. However, as the commander had to enter appellant's room to gain access to the duct and as he performed the search totally within appellant's room, we find that it was in effect a search of the room, thereby giving appellant standing to object.

Public property belongs to the people, but no one person or group of persons has a constitutional right to unrestricted use of public property at such time, in such manner, and for such individual purpose as is personally desired. Attempted use of public areas, such as streets and parks, which are regularly and generally open to the public, for the exercise of individual constitutional rights, as speech and assembly, can be restricted on the basis of "narrow, objective, and definite standards," to protect public safety, order, and morals. *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). When the public property is of a kind that primarily serves a governmental purpose other than accommodation of the general public, the right of the government to control its use is even greater; in such instances, the only limitation is that when use by individuals for personal purposes is desired, the grant or denial of use must be upon a "nondiscriminatory" basis. Thus, in *Adderly v. Florida*, 385 U.S. 39, 47–48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966), the Supreme Court said:

> The State, no less than a private owner of property, has power to preserve the property under its control for the use for which it is lawfully dedicated. For this reason, there is no merit to the petitioner's argument that they had a constitutional right to stay on the property . . . .. The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose.

As regards military property, the Supreme Court has held that the Government can exercise "unfettered control." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 896, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). It has described the nature of the Government's authority over such property as "proprietary." *Id.* at 896, 81 S.Ct. 1743. More

2. 50 C.M.R. at 306.

recently, the Supreme Court remarked on the different character of Government interaction with the general populace in the civilian community from that of its interaction with members of the military community. It said that in the military, "unlike the civilian situation, the Government is often employer, landlord, provisioner, and lawgiver rolled into one." *Parker v. Levy*, 417 U.S. 733, 751, 94 S.Ct. 2547, 2559, 41 L.Ed.2d 439 (1974).

This Court has recognized the right of the Government, in its proprietary character, to protect Government property from misuse by one to whom it has been entrusted for a public purpose. In *United States v. Poundstone*, 22 U.S.C.M.A. 277, 46 C.M.R. 277 (1973), the Court upheld the right of a military commander to order a search of Government vehicles to determine whether unauthorized substances were concealed therein, without regard to the constitutional requirements for search and seizure that would obtain if the search had been of a private vehicle belonging to a member of the military. In *United States v. Weshenfelder*, 20 U.S.C.M.A. 416, 43 C.M.R. 256 (1971), the Court upheld the search of a Government desk assigned to a person for public purposes as being outside the purview of the Fourth Amendment. *See also United States v. Simmons*, 22 U.S.C.M.A. 288, 46 C.M.R. 288 (1973) (Darden, C. J., concurring). In *United States v. Troy*, 22 U.S.C.M.A. 195, 46 C.M.R. 195 (1973), the Court indicated that constitutional restraints as to search and seizure of the private property of an individual do not apply to a search of the common areas of a barracks used as living quarters.

Consistent with these cases, the Court of Military Review below held that, although the accused had exclusive use and control of the room assigned to him, he had no right "to use the duct as a storage area"; and such "use of the duct" constituted "a trespass." The majority enter a caveat to this part of the court's opinion, but apparently agree with its reasoning that Captain Lambright "had to enter appellant's room to gain access to the duct and as he performed the search totally within appellant's room . . . it was in effect a search of the room." 50 C.M.R. at 305–06. I am constrained to disagree.

The deficiency I perceive in the Court of Military Review's reasoning is as to the right of access to the duct that it accorded the Government. I noted earlier the intermediate court's opinion that the Government "could only enter" the accused's room for special purposes, which it detailed as follows: "[T]o inspect the condition of the . . . duct, or to perform maintenance or repair work, or for some similar purpose." *Id.* at 306. As the Government possessed unfettered control over its own property, it was, in my opinion, lawfully entitled to access to the interior spaces of the walls for any, or no, reason. I have no doubt it could enter into those interstices to cleanse them of any contaminant, whether it was a known insect nest or a suspected cache of contraband. The Court of Military Review found, and I agree, that in authorizing the accused to reside in the room assigned to him, the Government did not abandon, or agree to share with him, its control of the spaces between the walls of the building. *Cf. Flower v. United States*, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972). The question then is whether the Government could not enter the accused's room to obtain access to the wall spaces by the one existing opening unless it had accused's consent or otherwise met the constitutional requirements for a search of his person or private effects. I think not.

Although technical legal rights in property are not necessarily determinative of the individual's right to constitutional protection against unreasonable search and seizure,[3] property interests can empower the Government to enter a place, without probable cause to believe that evidence of a crime will be found therein. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). A person who has no lawful right or interest of any kind in a place, but, without authority, uses that

---

3. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

place for his own purposes, is not entitled, because of such use, to exclude one who has a lawful, proprietary interest in the place. Here, I believe significant property interests in the Government underlie its right to enter the accused's room for access to the interior of the walls. Whether the Government's allocation of the room to the accused for his living quarters established a conventional landlord-tenant relationship need not be decided. Whatever the precise nature of the legal interests of each, I am satisfied that, of necessity, the Government retained a right of entry into the accused's room for access to the preexisting, structural openings to the interior of the walls. It may be that this right of access could be exercised only at reasonable times and in reasonable ways,[4] but the reasonableness of the time and the circumstances of the second entry into the accused's room are not disputed on this appeal.[5] As the Government had no means of access to the interior spaces of the walls other than through the openings located in the accused's room, it could, in my opinion, enter that room for the purpose of access, without violating any reasonable expectation of privacy that the accused could anticipate from the assignment of the room to him.[6]

For the reasons indicated, I would answer in the negative the second certified question, which asks whether the Court of Military Review was correct in holding that the appellee had standing to object to the reentry into his room. My answer to that question makes it unnecessary to consider the other certified questions. I would reverse the decision of the United States Army Court of Military Review and return the record of trial to the Acting Judge Advocate General for submission to the court for further proceedings.

4. *See Wyman v. James*, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971).

5. Apparently the accused was awakened from sleep when the inspection party sought entry into his room at the first occasion. He had been on duty the previous night, but it is not apparent from the record when his tour of duty ended and he retired. In any event, there is no

intimation in the record that he was, in the slightest degree, discomforted or upset by either entry.

6. *Cf. United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Wyman v. James, supra.*