**UNITED STATES, Appellee,**

v.

**First Lieutenant Theodore R. HINES, SSN 407–62–3123, United States Army, Appellant.**

**CM 436127.**

U. S. Army Court of Military Review.

31 Aug. 1978.

---

Major Buren R. Shields, III, JAGC, argued the cause for the appellant. With him on the brief were Colonel Robert B. Clarke, JAGC, and Major Benjamin A. Sims, JAGC.

Captain Michael J. Wall, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Captain Douglas P. Franklin, JAGC.

Before CLAUSEN, CARNE and MITCHELL, Appellate Military Judges.

## OPINION OF THE COURT

CARNE, Senior Judge:

Appellant was found guilty, contrary to his pleas, of possession of marihuana in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. He was sentenced to confinement at hard labor for two months, forfeiture of $500.00 pay per month for two months, and dismissal from the service. Our review of the case is pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

The marihuana in question was discovered during an inventory of property contained in appellant's room in the bachelor officers' quarters (BOQ) on post. This inventory was occasioned by a changeover of billeting officers at appellant's installation, and was conducted for the purpose of verifying the records of accountability for Government-owned property being used in the BOQ. Occupants of BOQ rooms had been issued both appropriated and nonappropriated fund property. The billeting officer was the hand receipt holder for the appropriated fund property, which was furnished to room occupants on sub-hand receipts. The billeting officer was also the property book officer for the nonappropriated fund property, which was furnished to occupants on hand receipts. The incoming billeting officer requested a 100 per cent inventory before accepting administrative responsibility for the property reflected on the hand receipts and in the property book. The inventory was conducted by the incoming billeting officer and by First Lieutenant Rodriguez, the outgoing billeting officer.

On the day appellant's room was inventoried, the new billeting officer was unable to participate. First Lieutenant Rodriguez nevertheless continued the inventory, accompanied by a civilian clerk. Upon arriving at appellant's room, First Lieutenant Rodriguez knocked on the door and, when no one answered, used a pass key to gain entrance. Once inside appellant's room, First Lieutenant Rodriguez and the clerk began the inventory of the Government-owned property therein.

Among the items of nonappropriated fund property on receipt to appellant was a portable air conditioner. This inventory was conducted in February, and it was apparently common for BOQ occupants to keep the air conditioners in the closet during the winter months. When the air conditioner was not immediately in view, First Lieutenant Rodriguez opened the closet door and discovered not only the air conditioner, but a large green plant which he suspected to be marihuana. He subsequently observed what he suspected to be burned portions of marihuana cigarettes in an ash tray elsewhere in the room. The two men then completed their inventory, locked the door to appellant's room, and inventoried two other rooms before returning to the billeting office and reporting their observations. The commander of the installation support activity authorized a search of appellant's room based upon information which resulted from this inventory. Laboratory analysis of the plant and cigarette butts seized during that search revealed the presence of marihuana. Before this Court, as at trial, appellant challenges the lawfulness of the initial entry into his room and the admission of the evidence seized during the search resulting therefrom.

I

In passing on the merits of appellant's contention, we face the threshold inquiry of whether appellant possessed a reasonable expectation of privacy in his BOQ

room. *See generally, Michigan v. Tyler and Tompkins,* —— U.S. ——, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *Mancusi v. DeForte,* 392 U.S. 364, 368, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). We hold that he did, but that the right was not absolute. The test for deciding this issue was set out in *United States v. Roberts,* 2 M.J. 31, 36 (C.M.A.1976) (footnote omitted): "[M]ilitary quarters have some aspects of a dwelling or a home and *in those respects* the military member may reasonably expect privacy protected by the Fourth Amendment." Appellant's BOQ room, including the Government-owned property with which it was furnished, was intended for use as a place of residence, but on-post Government quarters are provided to ensure military readiness and to facilitate the performance of military duties. Accordingly, we find that as to his BOQ room appellant could reasonably expect that degree of privacy which a person would normally associate with his dwelling place except for those intrusions which are reasonably related to a legitimate Governmental interest in those quarters.[1]

### II

■ Having resolved the expectation of privacy issue, we must now decide whether the entry into appellant's room was reasonable, inasmuch as the Fourth Amendment affords protection to the privacy and dignity of individuals only against unreasonable intrusions. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In resolving this issue, we apply the rule that evidence which is discovered during the course of an inventory is admissible in evidence if three requirements are met. The inventory must have been legitimately based, properly conducted, and not have been used as a pretext for an illegal search. *United States v. Kazmierczak,* 16 U.S.C.M.A. 594, 37 C.M.R. 214 (1967); *United States v. Welch,* 40 C.M.R. 638 (A.B.R.), *affirmed,* 19 U.S.C.M.A. 134, 41 C.M.R. 134 (1969). We have only to address the first two requirements, as appellant concedes that the inventory was not a search or in any way a subterfuge for investigation into suspected criminal activity.

### A

■ Inventories of property which is within the control or custody of the Government may be justified by the need for safeguarding the property while it is in the Government's custody, for protecting the Government against claims or disputes arising from the loss or theft of the property, and for protecting Government personnel against the potential hazards which might result should the Government unknowingly come into possession of dangerous substances. *See South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (and cases cited therein) (inventory of impounded automobile); *United States v. Welch,* 19 U.S.C.M.A. 134, 41 C.M.R. 134 (1969) (inventory upon apprehension); *United States v. Mossbauer,* 20 U.S.C.M.A. 584, 44 C.M.R. 14 (1971); *United States v. Kazmierczak, supra,* (inventory of property in military unit after AWOL or apprehension); *cf., United States v. Walker,* 46 C.M.R. 587 (A.C.M.R.1972). The rationale which justifies these inventories also justifies an inventory by billeting officials of Government-owned property supplied for use in Government-owned quarters.

---

1. We have considered in this regard the fact that appellant had declined in writing to have maid service for his room and that the form he signed contained a statement that the rooms of BOQ residents not electing maid service were subject to inspections. The prosecution at trial argued that appellant, being on notice that his room was subject to inspection, could not have had a reasonable expectation of privacy therein. This argument overlooks the fact that an amenability to inspection does not militate against the existence of an expectation of privacy, but rather that an inspection is a permissible intrusion into such an expectation. *United States v. Roberts,* 2 M.J. at 36. We find nothing in appellant's signing of this form which lessened his general expectation of privacy in his BOQ room. Nor do we believe that in signing this form appellant granted permission to have his room entered by the Government for purposes other than reasonable cleanliness inspections. *United States v. Hawkins,* 49 C.M.R. 57 (A.C.M.R.1974).

Appellant contends, however, that the Army Regulation which provides for inventories of Government property did not authorize an inventory under these particular circumstances. He therefore claims that there was no legitimate basis for this particular inventory and that the marihuana discovered as a result should have been suppressed. The regulatory provision in question was paragraph 2–10 of Army Regulation 710–2 (Change 3, 8 August 1975),[2] which set out five situations in which inventories of basic issue list items were *required*. This regulation required inventories upon change of individuals holding hand receipts (paragraph 2–10(a) ) and upon change of property book officers (paragraph 2–10(c) ). Entry into occupied quarters for that purpose, however, was excluded from the *requirement* to inventory under paragraph 2–10(c), but this lack of specific regulatory requirement for the inventory of furniture in BOQ rooms is not determinative of whether such an inventory was permissible.

While entry into BOQ rooms for the purpose of making a physical count was not required by regulation, neither was it forbidden. An inventory of property does not become unreasonable in constitutional terms merely because it is not required by statute or regulation. *See, e. g., South Dakota v. Opperman, supra* (upholding an inventory performed solely in accordance with standard police procedures).[3] Moreover, when the property to be inventoried is owned by the Government and provided to military personnel for use in Government-owned quarters, we perceive an additional justification for upholding the legitimacy of the inventory. Even in the absence of statute, regulation, or a standard procedure, Government officials may conduct reasonable inventories of such property in order to properly determine administrative accountability, to safeguard the Government

against loss of its property, or to fix pecuniary liability on those responsible for any loss or misuse. We therefore conclude that it was not unreasonable for the billeting officials to inventory the appropriated and nonappropriated fund property which had been provided to appellant for use in this BOQ room.

### B

The above conclusion does not end our analysis, for even where a legitimate inventory has been conducted in good faith it must have been conducted in such a way as to strike a fair balance between a legitimate Governmental need and the right of the individual to privacy. *United States v. Mossbauer, supra.* The appellant contends that it was not reasonable to enter his BOQ room to conduct an inventory of property without providing advance notice of the pending intrusion. We disagree.

Weighing the factors bearing on the reasonableness of the manner in which this inventory was conducted, we strike the balance in favor of the legitimate Governmental need over the accused's limited right of privacy. The following factors, taken collectively, lead to the conclusion that the intrusion in this case was reasonable without the need to provide notice. The quarters and the property provided therein belonged to the Government. The responsible individuals had information generally, and specifically as to the appellant's room, that the hand receipts no longer accurately reflected the property being used in the BOQ rooms. Additionally, it is the individual BOQ occupant who has signed for the property that is ultimately responsible for its loss or misuse. Therefore, the inventorying officers had a legitimate interest in determining their true administrative accountability without providing notice to those occupants who would stand to lose financially

---

**2.** The evidence conclusively established that this was not a quarterly inspection conducted under authority of AR 210–16.

**3.** *See also Cooper v. California,* 386 U.S. 58, 61, 87 S.Ct. 788, 790, 17 L.Ed.2d 730 (1967):

"[T]he question . . . is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment."

by the discovery of any discrepancy. It must be acknowledged that one possible explanation for discrepancies is the loss or misuse of property by the occupants. While there is no evidence that this factor was a motivational basis for conducting this inventory, it is a proper consideration in determining whether it was reasonable to conduct the inventory without notice. Finally, although the inventory of the BOQ alone extended to 300 rooms and was to be completed in a limited amount of time, this particular inventory was conducted at mid-morning on a duty day, which is unquestionably a reasonable hour.

We find that the giving of notice of this type of inventory, when it is to be conducted during duty hours on a duty day, and which, therefore, may preclude the occupant's presence, is no more reasonable or advisable a procedure than conducting the same inventory without notice.

Accordingly, the findings of guilty and the sentence are AFFIRMED.

Chief Judge CLAUSEN and Judge MITCHELL concur.