# UNITED STATES

v.

## Captain George H. SEBERG, Jr., 508–66–4184 FV, United States Air Force.

### ACM 22312.

U. S. Air Force Court of Military Review.

Sentence Adjudged 13 Oct. 1977.

Decided 15 Sept. 1978.

Appellate Counsel for the Accused: Mr. Donald A. Timm, Seoul 100, Korea, Colonel B. Ellis Phillips and Major Gary C. Smallridge.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., Major Alvin E. Schlechter, Major Gilbert J. Regan and Captain James R. Van Orsdol.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

ORSER, Judge:

Tried by a general court-martial composed of a military judge sitting alone, the accused stands convicted, consonant with his pleas, of conspiring to violate a general regulation prohibiting the importation of property into the Republic of Korea for the purpose of gain or profit, and five specifications charging the violation of that same general regulation—three by misuse of his customs-free privileges regarding the importation of goods for the purpose of personal gain or profit and two by misuse of the military postal system—in violation of Articles 81 and 92 of the Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892. In consequence of a pretrial agreement, the approved sentence is a dismissal from the service, confinement at hard labor for four months, forfeiture of $850.00 per month for five months and a fine of $4,000.00.

The initial appellate defense issue for resolution is whether the military judge, in his guilty plea inquiry, satisfied the requirements of *United States v. Green,* 1 M.J. 453 (C.M.A.1976), concerning pretrial agreements. In *United States v. King,* 3 M.J. 458 (C.M.A.1977), decided a short time after this case was tried, the Court held that military judges must strictly comply with the *Green* requirements. See also *United States v. Elmore,* 1 M.J. 262 (C.M.A.1976).

Here, during the guilty plea inquiry, the military judge exhaustively reviewed with the accused each and every term and condition of the plea bargain. The trial judge established that the accused understood the meaning and effect of the language of the agreement including the sentence limitations. As he was sitting alone, the judge properly postponed examination of the punishment limitation portion of the agreement until after he had announced sentence. At that time he examined the section of the agreement containing such limitations, declared his understanding thereof, and received the concurrence of counsel for both sides that their understanding comported with his. During his inquiry the military judge did not, however, as required by *Green-King,* supra, secure from the defense and trial counsel "confirmation that the written agreement encompassed all of the understanding of the parties, and (aside from the limitations on the sentence) that the judge's interpretation of the agreement comported with their understanding both as to the meaning and effect of the plea bargain."

Upon detection of the foregoing omissions *during our initial review of this case,* we directed that a limited evidentiary hearing be conducted in an effort to fully satisfy the *King-Green* mandate. *United States v. Seberg,* 5 M.J. 589 (A.F.C.M.R.1978); see *United States v. Ray,* 20 U.S.C.M.A. 331, 43 C.M.R. 171 (1971); *United States v. Dubay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967); *Smith v. Helgemoe,* 23 U.S.C.M.A. 38, 48 C.M.R. 509 (1974). Such hearing was duly held. In attendance were all original trial participants, in addition to the accused's civilian appellate representative.

During the hearing, the military judge ascertained by appropriate inquiries addressed to the trial and defense counsel that there were no *sub rosa* agreements or

understandings and that the formal written agreement contained the entire understanding of the parties. He further sought and received confirmation from counsel that their interpretation of the agreement, including the punishment limitation portion thereof, comported precisely with his, as to both the meaning and effect of the plea bargain.

 Consideration of the inquiry by the military judge during trial, together with the supplementary inquiry conducted pursuant to our order, satisfies us that the *Green-King* mandate has now been fully met and that the accused's plea of guilty was providently made. Implicit in this conclusion, obviously, is our belief that our unique fact-finding authority under Article 66(c) of the Code, 10 U.S.C. § 866(c), supra, permits us to resort to the hearing procedure utilized to cure the *Green-King* omissions here encountered. *United States v. Dyer,* 5 M.J. 643 (A.F.C.M.R.1978); see *United States v. Hounslea,* 5 M.J. 546 (A.F. C.M.R.1978); *United States v. Crowley,* 3 M.J. 988 (A.C.M.R.1977) (en banc), reversed by order, 4 M.J. 170 (C.M.A.1977), order withdrawn and motion for reconsideration granted, 4 M.J. 272 (C.M.A.1978); *United States v. Williamson,* 4 M.J. 708 (N.C.M.R. 1977). In that regard, we disagree with a decision by a panel of the United States Navy Court of Military Review in the case of *United States v. Gregg,* 4 M.J. 897 (N.C. M.R.1978), that *United States v. King,* supra, implicitly rejects the limited hearing remedy in these circumstances. The language of another panel of the Navy Court in *United States v. Williamson,* supra, at 709, more closely reflects our own view of the propriety of the procedure:

> [T]he *King* decision does not deprive this Court or lower reviewing authorities of the right to obtain additional information, either through affidavits or an appropriate hearing, in order to meet our fact finding responsibilities and, thus, fill in asserted procedural gaps when actual prejudice has not been alleged. To interpret *King* otherwise would result in our being forced, contrary to Article 59(a),

UCMJ, 10 U.S.C. § 859(a), to mechanistically reverse even those cases in which the failure to follow the *Elmore* guidelines constitutes quintessentially harmless error. I do not believe the Court of Military Appeals intended to require such of [the] Court or of convening and supervisory authorities. . . . High Court decisions should not mandate reversal of cases for departures from procedural norms not involving considerations of constitutional due process, or material prejudice to a substantial right. To do so elevates form over substance and, thus, conflicts with our basic principles of criminal law as well as with the Uniform Code of Military Justice. (footnote omitted)

██ We disagree with a post-hearing assertion by the accused's appellate civilian counsel that still another limited hearing is required because of possible *ex parte* communications between the military judge and the trial counsel.

To resolve this allegation we have considered affidavits submitted by the accused, his counsel, the military judge and the trial counsel. These submissions disclose that prior to the hearing we ordered, the trial counsel sought out the military judge to inquire about the procedure that would be followed. The upshot of this meeting was that, at the trial counsel's request, the military judge gave him a copy of a three page guide he had prepared. The military judge originally intended to provide the defense a copy of the document but failed to do so since they never inquired about his intended procedure.

Having examined the document,[1] we are satisfied that it is, as represented, a procedure guide prepared by the military judge to facilitate his conducting the hearing we directed. It contains nothing indicative of a pre-judgment of the facts but appears to merely outline the required areas of inquiry and possible findings the military judge believed were necessitated by our order and relevant case law.

Under the circumstances, we agree with appellate government counsel that the mili-

---

1. The three page document is before this Court as an attachment to the trial counsel's affidavit.

tary judge's conduct did not violate required standards of neutrality. See *United States v. Payne*, 3 M.J. 354 (C.M.A.1977), and the cases cited therein. We discern no indication of an intent by the judge to favor or in any manner create a tactical advantage for the government.

Even assuming for purposes of this decision that the military judge's delivery of the document in question to the trial counsel constituted an *ex parte* communication, as contemplated by the Code of Judicial Conduct or the American Bar Association Standards concerning the Function of the Trial Judge,[2] we are persuaded that in this instance the accused suffered no prejudice. Having reviewed the record of the hearing, the parameters for which were narrowly drawn in our order, we are convinced the military judge's inquiry was in all respects thorough and, above all, fair and impartial. We accordingly concur with appellate government counsel that the accused is entitled to no relief.

Appellate defense counsel next contend that the accused's plea of guilty to two of the specifications was improvident since his responses to the military judge during the inquiry into his guilt and a stipulation of evidence demonstrated he was not in fact guilty of the offenses. *United States v. Wheeler*, 22 U.S.C.M.A. 149, 46 C.M.R. 149 (1973); *United States v. Scott*, 22 U.S.C. M.A. 25, 46 C.M.R. 25 (1972). We agree.

The two offenses in question, Specifications 4 and 5 of Charge II, allege violations of paragraph 17a(3) of the earlier cited United Nations Command Regulation. This provision provides that personnel will not "[k]nowingly make use of the military postal system in the name of another authorized person, organization, or agency."

In one of the two specifications, the accused was charged with violating the order by using the postal system in the name of a Staff Sergeant Joseph L. Barthelow. In the other, he was charged with using the system in the name of a Major Steven C. Mays.

The record shows that the accused and a Captain Kent W. Lehman were engaged in selling on the blackmarket property they purchased through the Army and Air Force Exchange System (AAFES) and the Navy Exchange (NEX) mail order branches. In the course of events, the accused persuaded the two persons named in the misuse of the mail specifications to participate in the venture. Pursuant to that persuasion, the two individuals made mail-order purchases of AAFES and NEX merchandise in their own names with delivery at their own military return addresses. Upon receiving the items ordered, they delivered them directly to Captain Lehman for ultimate sale to unauthorized recipients. The accused then split the profits received with Barthelow and Mays.

Although not explained in such terms to the accused by the military judge, the accused's guilt of the instant offenses was apparently based on the law of principals on a theory of imputed responsibility. See Article 77, Code, 10 U.S.C. § 877, supra; Manual for Courts-Martial, 1969 (Rev.), paragraph 156. An individual is deemed an aider and abettor, and thus liable as a principal, when he knowingly aids or encourages another to commit a crime. To be liable, the aider or abettor must share the criminal intent or purpose of the actual perpetrator. In the language of paragraph 156 of the Manual, supra:

> If there is a concert of purpose to do a given criminal act, and that act is done by one of the parties, all probable results that could be expected from the act are chargeable to all parties concerned; but in order to make one liable as a principal in such a case, the offense committed must be one embraced by the common venture or an offense likely to result as a natural or probable consequence of the offense directly intended.

Under this theory, one who causes an act to be done, which, if directly performed by him, would be punishable under the Uniform Code of Military Justice, is a principal.

---

2. Canon 3A(4), Code of Judicial Conduct (1972); ABA Standards, The Function of the Trial Judge § 1.6 (1972).

However, we agree with appellate defense counsel that when the act is not an offense by the individual who does it, the aider or abettor cannot be guilty of a crime. See 22 C.J.S., Criminal Law, § 87; 21 Am. Jur.2d, Criminal Law, § 119. *United States v. Zerbst,* 111 F.Supp. 807 (1953).[3] Applying this rule to the case at bar, as seen, the regulation states a prohibition against the use of the military postal system in the name of another individual or entity. As appellate defense counsel argue, the directive is violated when an individual uses the return address of another individual, organization or agency on his mail; or by an individual who has authority to receive mail on behalf of another person, organization or agency who usurps that authority by receiving mail for himself by having it addressed to such other person, organization or agency.

Here, although they may have been guilty of violating a provision of the general regulation prohibiting the use of their customs-free privileges for personal gain or profit (the subject of three of the other offenses charged against the accused) Barthelow and Mays, by ordering property in their own names to be shipped to their own addresses, were obviously not guilty of using the military postal system in the names of others. It follows, therefore, that the accused could not be factually guilty of such offenses either as the active perpetrator or on the basis of the law of principals.[4]

The findings of guilty of Specifications 4 and 5 of Charge II are accordingly set aside and dismissed. As these offenses were at trial considered multiplicious for sentencing purposes with Specifications 2 and 3 of Charge II, our action does not necessitate reassessment of the adjudged or approved punishment.

Our decision in the case of *United States v. Lehman,* 5 M.J. 740 (A.F.C.M.R. 28 June 1978), is dispositive adversely to the accused of assertions by appellate defense counsel that the regulation upon which four of the six offenses were based is fatally overbroad, and that Specifications 2 and 3 of Charge II are multiplicious with Specification 1 of that same charge. The remaining errors asserted by the accused's appellate counsel, including those arising from the limited evidentiary hearing, are either without merit or were considered by the staff judge advocate in his review and properly resolved adversely to the accused.

For the reasons stated, the findings of guilty as modified herein, and the approved sentence, are

AFFIRMED.

EARLY, Chief Judge, and HERMAN, Judge, concur; ARROWOOD, Judge, not participating.

---

3. A recognized exception to this rule is a situation where the aider or abettor causes another to commit an offense and the actual perpetrator labors under an honest mistake of fact that his conduct is sanctioned. Manual for Courts-Martial, 1969 (Rev.), paragraph 156.

4. We also agree with appellate defense counsel that much the same reasoning applies, with the identical result, if we assume the accused's guilt, though not charged in such manner, is predicated on a conspiracy theory of culpability. The accused could not be convicted of a conspiracy the object of which is the use of the military postal system in the name of another authorized person if all of those with whom he is alleged to have conspired could not themselves be found guilty of the same conspiracy. See Manual for Courts-Martial, supra, paragraph 160. It is true that the act of one conspirator is the act of all, and every member of a conspiracy is responsible for acts done by his confederates which follow incidentally as probable and natural consequences in the execution of the common scheme. *United States v. Rhodes,* 11 U.S.C.M.A. 735, 29 C.M.R. 551 (1960); see *United States v. Salisbury,* 14 U.S.C.M.A. 171, 33 C.M.R. 383 (1963). And, an accused is liable for a substantive offense committed by a coconspirator when the criminal act is connected with and in furtherance of the objects of the conspiracy. Again, however, as with the aider or abettor theory, Barthelow and Mays did not themselves commit offenses when they acted as agreed. Thus, the accused cannot by vicarious or imputed responsibility be considered to have used the military postal system himself simply by virtue of the others' use thereof.