**UNITED STATES, Appellee,**

v.

**Specialist Four Hubert ARVIE SSN 436–15–6538, United States Army, Appellant.**

**SPCM 13882.**

U. S. Army Court of Military Review.

29 May 1979.

Appellant and Appellee were not represented by appellate counsel before the Court.

Before DE FIORI, FULTON and WATKINS, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

On the date of his trial and conviction by a special court-martial[1] whose sentence included a bad-conduct discharge thereby potentially requiring review by this Court,[2] the appellant executed a waiver of representation by appellate counsel. The waiver document, a form letter adopted by the staff judge advocate's office of the convening authority's command, included the following recital:

> I have been advised, pursuant to the Uniform Code of Military Justice, Article 70, that if my case is referred to the United States Army Court of Military Review, I have the right to be represented before said Court of Military Review by appellate defense counsel appointed by The Judge Advocate General of the Army, or by civilian counsel retained by me, or

---

1. The appellant pleaded guilty to unlawfully entering another soldier's wall locker with intent to commit larceny and with larceny of that soldier's property valued at $900.00 in violation, respectively, of Articles 134 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 934, 921 (1976).

2. Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1976). Pursuant to a plea agreement entered into before trial, the convening authority approved the bad-conduct discharge and only so much of the rest of the sentence as provided for confinement at hard labor for 75 days, forfeiture of $200.00 per month for 75 days, and reduction to the grade of Private E–1.

both. I understand that the United States Army Court of Military Review has the power to review both questions of fact and law in my case with respect to the findings of guilty and sentence as approved by the convening authority, and considers in this regard all legal and mitigatory matters on the basis of the entire record of trial prior to determining what it considers the correct findings and sentence.

We assume that it was the appellant who placed a check-mark by the subparagraph stating that he did "not desire to be represented by appellate defense counsel before the Court of Military Review and hereby waive my right to such representation."[3] One of the *unchecked* subparagraphs mentions the right to communicate with "appointed military appellate counsel concerning legal and factual matters relating to my case as well as matters that concern a presentation on my behalf in the area [sic] of clemency or sentence reduction. . . ." The record before us includes no statement by the trial defense counsel as to what information or advice *he* gave the appellant concerning representation by appellate counsel.[4]

Accordingly, when the record of trial was referred to this Court, we requested that The Judge Advocate General appoint counsel for the appellant. Our praecipe stated that "If designated counsel for the appellant determine that, in their opinion, the appellant persists in a voluntary and intelligent waiver of his right to appellate representation before this Court, counsel may present the facts to this Court and request relief."

Reciting their belief that the appellant waives representation before this Court "with full knowledge and understanding of his rights," appointed counsel have moved to withdraw. Their motion is supported by the following statement concerning a telephone conversation with appellant: "Appellate defense counsel explained to the appellant his various rights and the possible consequences which could arise from his decision. After conversing with counsel for some time, the appellant still desired not to be represented by appellate defense counsel."

This recital likewise does not disclose what information or advice was given the appellant.

The Court of Military Appeals has stated that—

An accused convicted at trial cannot make an informed decision concerning whether to accept or reject representation by an attorney in his appeal from that conviction unless he is made aware of the powers of the Court of Military Review and of the [appellate] defense counsel's role in causing those powers to be exerted.

*United States v. Palenius*, 2 M.J. 86, 91 (C.M.A.1977) (Perry, J.). The information to be given to an accused concerning the powers of this Court (as to both findings and sentence) is set forth clearly and in detail in an accompanying footnote (omitted from the above quotation). *Id.* at 91 n.7. The role of counsel is succinctly stated in the text at the top of the following page of the opinion. *Id.* at 92.

■ It seems to us that the Court of Military Appeals' opinion stands as a mandate and that little if anything at all could be done to improve upon Judge Perry's description of the information that an accused must have. We suggest that the promulgators of purported waiver documents such as involved in this case follow the Court of Military Appeals' prescription more closely. Nevertheless, despite its shortcomings, we, in comparing the entire form used in this case with the points made

---

**3.** The use of initials rather than the more anonymous checkmark would be more reassuring to appellate reviewers. *Cf. United States v. Booker*, 5 M.J. 238, 244 (C.M.A.1977), *modified*, 5 M.J. 246 (C.M.A.1978).

**4.** We are not suggesting that he abandoned his client. The record includes both a rebuttal to the staff judge advocate's review prepared by the trial defense counsel and a petition for clemency, evidently prompted by him, signed by the three members of the court-martial.

in Judge Perry's opinion, hold that the appellant was advised *substantially* as required by the Court of Military Appeals.[5]

While appellate counsel, as noted above, have not disclosed to us the advice they gave to appellant, their response to our praecipe fulfills, we think, two functions.[6] First, it assures us that the appellant has had the opportunity to reconsider his decision after completion of all proceedings at the convening authority level.[7] Second, ethical considerations permit us safely to infer that there is no indication that appellant was *misadvised* at the trial level which was the situation in *Palenius*. We therefore now hold that the appellant's waiver of representation by counsel was knowingly and intelligently made.

In view of the foregoing, we grant appellate defense counsels' motion to withdraw, and we proceed to our duty as outlined in *United States v. Palenius*, 2 M.J. 86, 91 n.7 (C.M.A.1977).

Only two matters were contested in the appellant's trial. Both issues arose during the presentencing proceedings. One resulted from the challenge of a court member for cause; the other, from the questioned admissibility of records of nonjudicial punishment. Our search for other potential errors has revealed none. Accordingly, our opinion is limited to the two matters raised at the trial.

■ The sole function of the court members in this case was to determine a sentence. The challenged member disclosed that he was a United States Military Academy classmate, companymate, and friend of Captain Kane, appellant's company commander. (It developed, however, that they had met only twice since 1973 and were not close associates.) The court member re-

spected Captain Kane and said that if Captain Kane were to testify in a case, he probably would give more credence to his testimony than otherwise. He also expressed the belief that Captain Kane would not prefer charges unless he had investigated them and had concluded that there were sufficient grounds to suspect that the accused had committed the offense charged. On the other hand, the member stated that the fact that Captain Kane had preferred the charges would not lead him (the court member) to conclude that any particular type of sentence should be imposed.

After argument by counsel for each side, the member was recalled to be asked whether he supposed that Captain Kane had recommended trial by this special court-martial empowered to adjudge a bad-conduct discharge. The court member responded that he had no belief as to what Captain Kane had recommended and knew, moreover, that recommendations would have been made at the battalion and higher levels before the charges were referred to trial. Again the member denied that he would be inclined to adjudge any harsher sentence because of his respect for Captain Kane.

Extensive argument for both sides centered on the question whether a court member who was assumed to be disqualified to judge the merits of a case (because of the increased credence he might give to the accuser's prosecutorial decision and testimony) must necessarily, therefore, be disqualified when the court is sitting only to adjudge a sentence. *Cf. United States v. Karnes*, 1 M.J. 92, 94 n.1 (C.M.A.1975) (indicating separability of disqualification on sentencing and on the merits). After ex-

---

5. We also suggest that the form be devised in such a way that we will have greater assurance that an accused has considered the entire form, not merely the lone option selected, and that his choice be more clearly identifiable as his own. See note 3, *supra*.

6. However, we may in future cases pursue a course that leaves less doubt as to the information given an appellant and may take into account the suggestion in *United States v. Pal-*

*enius*, 2 M.J. 86, 92 (C.M.A.1977) that the burden of showing waiver is on Government.

7. The waiver having been executed on the day of trial, it was perforce done before determining whether there was any comment to be made concerning the staff judge advocate's review and before the convening authority's action on the findings and sentence was known. This is one reason why our praecipe was calculated to cause a readvice by counsel.

tensive further argument by the parties and with full explanation of his ruling, the military judge denied the challenge subject to reconsideration should Captain Kane be called as a witness or the appellant's plea changed to not guilty. We hold that he did not misuse his discretion. The challenge was properly denied.[8]

■ The admissibility of records of nonjudicial punishment became an issue when the trial counsel sought to show the court members by means of such records that appellant had on several occasions been punished pursuant to authority conferred on commanding officers by Article 15, Uniform Code of Military Justice, 10 U.S.C. § 815 (1976).[9] The defense counsel objected on the basis that the records did not satisfy the requirements imposed by *United States v. Booker*, 5 M.J. 238 (C.M.A.1977), *modified*, 5 M.J. 246 (C.M.A.1978).[10] The trial judge overruled the objection, admitting the records without inquiry or explanation.

The records in question are properly completed Department of the Army Form 2627 entitled "Record of Proceedings Under Ar-

ticle 15, UCMJ," adopted 1 November 1973. Each form shows that "the individual to be disciplined . . . [was] told of his right to confer with an independent counsel before . . . [opting] for disposition of the question [by nonjudicial punishment rather than by trial]." *United States v. Booker*, 5 M.J. at 243. Appellant's waiver of his statutory right under Article 15 for removal to trial in a criminal proceeding is in writing, and the appellant's signature indicates that he personally waived the right making it unnecessary for us to infer this solely from a single check in a box on the prepared form. *Id.* at 243, 244.

Although I would hold otherwise, a majority of my brothers on this panel have adopted the view that fully and properly completed records of nonjudicial punishment on the mentioned form meet the *Booker* criteria for admissibility. See *United States v. Alford*, 6 M.J. 907, 908 (A.C.M.R.1979) (per curiam); *United States v. Rembert*, 5 M.J. 910, 911–12 (A.C.M.R.1978) (Watkins, J.).[11] Their view becomes the law of this case.[12] The trial judge did not

---

8. The member did not participate for he was peremptorily challenged.

9. As to the admissibility of evidence of nonjudicial punishment, see *United States v. Johnson*, 19 U.S.C.M.A. 464, 42 C.M.R. 66 (1970), and Army Regulation 27–10, Legal Services: Military Justice, par. 2–20*b* (26 Nov. 1968, as amended by changes through Change 16, 4 Nov. 1975).

10. The *Booker* decision affects trials occurring after 11 October 1977, the date of the decision. *United States v. Cannon*, 5 M.J. 198 (C.M.A. 1978). Appellant was tried in January 1979.

11. *Accord, United States v. Williams*, 7 M.J. 725 (A.C.M.R.S.13742, 14 May 1979); *United States v. Happel*, 5 M.J. 908 (A.C.M.R.1978); *United States v. Gordon*, 5 M.J. 653, 654 (A.C.M.R.1978); *United States v. Washington*, 5 M.J. 615 (A.C.M.R.1978); *cf. United States v. Riley*, 5 M.J. 894 (A.F.C.M.R.1978) (Air Force form not reflecting whether counsel was consulted). Based on the wording of *Booker* and on the authorities cited therein, I would hold that unless the evidence or an inquiry by the trial judge indicates that the person punished had in fact consulted counsel, the evidence or an inquiry by the trial judge must establish that the person knowingly and intelligently waived the right to counsel with awareness of the

consequences of failing to demand trial. *Cf. United States v. Rembert*, 5 M.J. 910, 912–13 (A.C.M.R.1978) (Fulton, Sr. J., dissenting); *United States v. Davis*, 6 M.J. 969 (N.C.M.R. 1979); *United States v. Hosie*, 6 M.J. 963, 964–65 (N.C.M.R.1979) (Gladis, J. dissenting). See also *United States v. Mathews*, 6 M.J. 357, 358 (C.M.A.1979). There was no such evidence or inquiry on the record in this case. In view of the number and type of prior offenses involved, I cannot conclude that the evidence did not influence the court members adversely to appellant in their determination of an appropriate sentence even though I assume that most if not all convicted barracks thieves receive punitive discharges, and I recognize that confinement and forfeitures were limited in this case by a plea bargain.

12. In view of the result we reach, we need not consider the question of retroactivity recently considered by another panel of this Court. See *United States v. Deavers*, 7 M.J. 677 (A.C.M.R. 1979), holding that *Booker* criteria of admissibility apply to records of nonjudicial punishment only when offered in a trial after 9 April 1979, the date of the decision in *United States v. Mathews*, 6 M.J. 357 (C.M.A.1979). The basis of decision, derived from *United States v. Cannon*, 5 M.J. 198 (C.M.A.1978), seems to be that a tremendous number of cases would be

err in admitting the records of prior punishment.

The findings of guilty and the sentence are affirmed.

Chief Judge DE FIORI and Judge WATKINS concur.

affected, resulting in disruption of the administration of military justice. I am less certain that the Court of Military Appeals will reach the same result since the language of *Booker* clearly foretold its applicability to records of nonjudicial punishment and, with only an occasional dissent, the Courts of Military Review consistently have been applying the perceived *Booker* criteria to cases tried after 11 October 1977. *See, e. g.,* cases cited in note 11, *supra.* In any event, more of the cases arising for military appellate review at any one time are likely to have similar issues than would be the case in any comparable civilian jurisdiction. Accordingly, the Court of Military Appeals would be well advised to resolve obvious questions of retroactivity at the same time a new rule is announced. *See e. g., Wolff v. McDonnell,* 418 U.S. 539, 573–74, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Witherspoon v. Illinois,* 391 U.S. 510, 523 n.22, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Delays of even a few months—*see United States v. Mixon,* 5 M.J. 236 (C.M.A.1978); *United States v. Cannon,* 5 M.J. 198 (C.M.A.1978); *United States v. Jackson,* 3 M.J. 101 (C.M.A.1977)—only add to uncertainty in the trial courts and the workload of the appellate courts, including the Court of Military Appeals.