UNITED STATES, Appellee,

v.

Private First Class (E–3) Randy W. HOWARD, SSN 498–72–2250, United States Army, Appellant.

SPCM 13837.

U. S. Army Court of Military Review.

25 July 1979.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain William B. Ramsey, JAGC, and Captain Robert L. Gallaway, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Major David McNeill, Jr., JAGC, were on the pleadings for appellee.

Before FULTON, WATKINS and LEWIS, Appellate Military Judges.

OPINION OF THE COURT

FULTON, Senior Judge:

Although pleading not guilty, the appellant was convicted, in a special court-martial bench trial, of wrongfully possessing a switchblade knife in violation of general regulations, assaulting Sergeant Pingley and Specialist Four Pooler with a means (the knife) likely to produce grievous bodily harm, and threatening to kill Specialist Pooler.[1] The adjudged sentence included a bad-conduct discharge, confinement at hard labor for four months, forfeiture of $250.00 pay per month for five months, and reduction to the grade of Private E–1. The convening authority approved the sentence.

On our review pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1976), the sole error assigned relates to the admissibility of a record of prior nonjudicial punishment, pursuant to paragraph 75d of the Manual for Courts-Martial, United States, 1969 (Revised edition), as evidence of the past conduct and performance of the appellant.

1. Violations of Articles 92, 128, and 134 of the Uniform Code of Military Justice, respectively, 10 U.S.C. §§ 892, 928, and 934 (1976).

The appellant's offenses were committed during an evening of heavy drinking at the "All Ranks Club" at Giebelstadt Army Air Field, Germany. Appellant denied having a switchblade knife with him (it was found at his quarters), much less putting it to the throat of Specialist Pooler and holding it to Sergeant Pingley's chin. After findings of guilty had been entered, the prosecution offered in evidence a "Record of Proceedings Under Article 15, UCMJ [10 U.S.C. § 815]" (Department of the Army Form 2627, 1 November 1973), which showed that 14 months earlier appellant had been punished for engaging in a fight at the "All-Grades Club" at Fort Bliss, Texas. The military judge received the exhibit in evidence over defense objection. When appellant testified in extenuation and mitigation, saying that he wanted to remain in the service to earn an honorable discharge, the trial counsel asked on cross-examination if the earlier incident didn't indicate that he had a problem controlling his temper and asked how he expected to keep his "nose clean from here on out" when previous nonjudicial punishment hadn't deterred him from committing the instant offenses. On re-direct examination, appellant asserted that the earlier incident occurred when he was trying to break up a fight. However, the trial counsel opened his sentencing argument with a reference to the "Article 15 for engaging in a fist fight," and, moments later, concluded his brief argument with a recommendation for the maximum punishment.

When the record of nonjudicial punishment was offered in evidence, the defense counsel had objected on the basis that "there is no evidence that the accused was ever provided the opportunity to consult with counsel before acceptance of the Article 15." After some discussion of the decision in *United States v. Booker*, 3 M.J. 443 (C.M.A.1977),[2] the defense counsel argued "that the thrust of the decision is that . . it should be the Government's burden to show that the individual was specifically offered the opportunity and did consult with or affirmatively waived his right to consult with counsel. Of course, the Government has not shown it in this case." The military judge admitted the record in evidence on the basis that, if *Booker* applied to records of nonjudicial punishment, it did not apply to records of punishment imposed (as was the nonjudicial punishment in this case) before the date of that decision.[3]

*United States v. Cannon*, 5 M.J. 198 (C.M.A.1978), has resolved the question of the retrospectivity of the *Booker* decision itself. As to the further question whether *Booker* applies only to the admissibility of records of trial by summary court-martial, which were the only exhibits at issue in that case, the Court recently held "that the requirements set forth in *Booker* are likewise ap-

2. Republished at 5 M.J. 238, modified on reconsideration, 5 M.J. 246 (C.M.A.1978).

3. The discussion that preceded Judge Morrison's ruling included the following:

DC: 1 September 1977 is the date of the Article 15, Your Honor.

. . . . .

MJ: The date of the *Booker* decision was—
DC: 10 [11] October, I believe, Your Honor, 1977.
MJ: Of course, the Court of Military Appeals very seldom mentions whether or not something will be retroactive or prospective, always leaving it to further confusion in the lower levels. The latest assignments of errors and replys [sic] to assignments of errors seem to place some significance on this aspect[. P]rognosticating, the trial counsel wishes to find that the *Booker* Decision really was only prospective and of course the defense

counsel would contend that it was retroactive.

DC: Yes, Your Honor.
MJ: And since the *Booker* Decision didn't have anything to do with Article 15's whatsoever, we must make up our mind now at the trial level what this all means.
DC: That's correct.

The question of *Booker's* retroactivity remained open until 5 July 1978 when the Court of Military Appeals decided that it should apply to all cases tried or retried after 11 October 1977. *United States v. Cannon*, 5 M.J. 198 (C.M.A.1978). Thus rejected was a view that the controlling question should be whether the punishment sought to be introduced in evidence was imposed before or after the date of the *Booker* decision. *See United States v. Washington*, 5 M.J. 615–16 (A.C.M.R.1978) (Jones, Sr. J.).

plicable to the introduction of a record of an Article 15 hearing in extenuation and mitigation [sic] at a court-martial." *United States v. Mathews*, 6 M.J. 357, 358 (C.M.A. 1979).[4]

In *Booker*, the Court of Military Appeals commented that "[t]he consequences of a decision to accept either an Article 15 or a summary court-martial disciplinary action under Article 20 involve due process considerations." *United States v. Booker, supra*, 5 M.J. at 243. Asserting a belief "that only a legally trained person can supply the requisite quantum of information necessary for an informed decision," the Court further said:

> [W]e believe it mandatory that the individual to be disciplined must be told of his right to confer with an independent counsel before he opts for disposition of the question *at either of the above levels*. Absent compliance with this proviso, evidence of the imposition of discipline *under either* is inadmissible in any subsequent trial by court-martial.

*Id.* (emphasis added). Finally the court said, "A waiver of the statutory right under Articles 15 and 20 for removal to trial in a criminal proceeding must be in writing."

The Court accompanied this reference to a written waiver of an adversarial criminal trial with a footnote saying in part:

> It is imperative that this written waiver establish a voluntary, knowing, and intelligent decision to forego removal to a criminal proceeding . . . . Any ambiguity must be resolved prior to the utilization of evidence of discipline *under either codal provision*.

*Id.* at 243 n.20 (emphasis added). Later, albeit in a passage dealing only with the records of summary courts-martial used in Booker's trial, the Court reiterated that the record must "affirmatively demonstrate a valid *personal* waiver by the individual of his right to trial in a criminal proceeding," and further that, "[i]f the exhibit does not affirmatively establish a valid waiver, the trial judge must conduct an inquiry on the *record* to establish the necessary information." *Id.* at 244. These last-quoted passages were expressly made applicable to records of nonjudicial punishment by the decision in *United States v. Mathews*, 6 M.J. 357 (C.M.A.1979).

My colleagues on this Court long since have concluded, properly I think, that Department of the Army forms currently being used to record the administration of nonjudicial punishment normally will satisfy the Bookerian requirements of advice as to the right to counsel and a written waiver of trial personally made. *See, e. g., United States v. Rembert*, 5 M.J. 910, 912 (A.C.M.R. 1978) (Watkins, J.); *United States v. Happel*, 5 M.J. 908 (A.C.M.R.1978); *United States v. Gordon*, 5 M.J. 653, 654 (A.C.M.R. 1978) (Jones, Sr. J.). My concern, expressed in *Rembert*, has been that the Booker court's footnote 20 may have signalled an additional requirement that the written waiver somehow affirmatively be shown to have been knowingly and intelligently made. *United States v. Rembert, supra*, 5 M.J. at 912–13 (Fulton, Sr. J., dissenting).[5] Since, if the individual did not actually consult counsel, the effectiveness of a waiver of trial might be called into question, it also has seemed to me that the voluntariness, knowingness, and intelligence with which counsel was waived might need to be established, at least if there is any ambiguity as

---

4. There can be some question whether *Booker* applies to the admission of records of nonjudicial punishment in all trials since the date of that decision (11 October 1977), or only those trials occurring after *Mathews* confirmed Booker's application (9 April 1979). *See United States v. Deavers*, 7 M.J. 677 (A.C.M.R.1979); *but see United States v. Arvie*, 7 M.J. 768, at 772 n.12 (A.C.M.R.1979). The appellant's trial occurred on 11 and 14 December 1978; that is, after *Booker* and before *Mathews*. In light of

the view I expressed in *Arvie*, I prefer to decide this case on grounds other than the retroactivity or prospectivity of *Mathews*.

5. However, in *United States v. Mathews*, 6 M.J. 357 (C.M.A.1979), the Court, if that was its intent, missed an opportunity to insist that a waiver of trial, as distinguished from a waiver of counsel, be shown to have been voluntary, knowing, and intelligent.

to that matter.[6] *See United States v. Arvie*, 7 M.J. 768 at 772 n.11 (A.C.M.R.1979); *cf. United States v. Booker, supra*, 5 M.J. at 243 n.22; but *compare United States v. Davis*, 6 M.J. 969 (N.C.M.R.1979), *with United States v. Hosie*, 6 M.J. 963 (N.C.M.R. 1979), *and United States v. Riley*, 5 M.J. 894 (A.F.C.M.R.1978).

Because the Court of Military Appeals has undertaken to review *Rembert*, but has not yet released an opinion, I have been reluctant to alter my views expressed there. *See United States v. Rembert*, 6 M.J. 146 (C.M.A.1978) (order granting petition for review); *see also* orders granting review in *United States v. Gillespie*, 6 M.J. 293 (C.M. A.1979); *United States v. Hunt*, 6 M.J. 199 (C.M.A.1979); and *United States v. Lania*, 6 M.J. 124 (C.M.A.1978).

Neither trial nor appellate counsel in the present case have pointed to any defect or ambiguity in regard to appellant's election to accept nonjudicial punishment rather than to demand a criminal trial.[7] The argument below was that in all cases the Government had a threshold burden of proving whether counsel was waived. The argument on appeal merely is that the Army nonjudicial punishment form is inadequate to meet the requirements of *Booker*. *Contra, United States v. Williams*, 7 M.J. 725 (A.C.M.R.1979); *United States v. Alford*, 6 M.J. 907 (A.C.M.R.1979).

My brothers of this panel would hold that the form used adequately met *Booker* requirements of advice as to counsel and a personal, written waiver of the right to demand trial, and that in this case the Government had no burden to demonstrate whether counsel was waived. Inferential support for their view now can be derived from *Mathews.* There, judicial inquiry as

to the validity of the waiver of trial was triggered by the absence of any signature from the writing, yet the *Booker* requirement for inquiry seems to have been met when the "trial judge on the record satisfied himself that the appellant had *waived his right to consult with an attorney* prior to his acceptance of an Article 15 proceeding." *United States v. Mathews, supra*, 6 M.J. at 358 (emphasis added).[8]

Accordingly, I will join my brothers in resolving this case and others pending before us (more than a score await decision) on the following basis: When from Department of the Army Form 2627 it is clear that the appellant was advised of his right to consult counsel, the election to forego trial has been personally signed by him, no ambiguity is apparent from the circumstances, and the defense has presented no evidence that the individual was not afforded the opportunity to consult counsel or that his election was defective in some particular, we will require no further showing as to the admissibility of the record of punishment.

In view of the foregoing, in this case: The findings of guilty and the sentence are affirmed.

LEWIS, Judge, concurring:

I concur with the result of this case reached by Senior Judge Fulton, but feel compelled to add a few thoughts of my own on the matter he raised in *United States v. Rembert*, 5 M.J. 910, 912–13 (A.C.M.R.1978) (Fulton, Sr.J., dissenting) and *United States v. Arvie*, 7 M.J. 768 at n. 11 (A.C.M.R.1979), and on which he continues to express concern here. Those who fashion the law must occasionally step back from this intricate work to insure the trueness of its direction. This is especially necessary where the workbench is judicial, the craftsmen judges and

---

6. Judge Lewis' concurring opinion suggests that I might read *Booker* as possibly requiring that an individual to be punished must indeed have consulted counsel before any waiver of his right to a criminal trial can be considered voluntary, knowing, and intelligent. While there is some unfortunate language in *Booker* that could support such an interpretation, I have not suggested any such result, as a reading of *Arvie* and *Rembert* will reveal.

7. That appellant was advised of his right to counsel, accepted nonjudicial punishment, and declined to appeal all on the same afternoon suggests that he in fact may not have consulted counsel, but there has been no assertion to that effect and no assertion that he was not given the opportunity to do so.

8. *See* note 5.

their raw materials cases. It is easy to build a warp into a work at its inception and only have the warp become clearly apparent as additional pieces are added. My brother has somehow travelled the distance from *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), which held that counsel was not required at a summary court-martial, to a point very close to reading *United States v. Booker*, 3 M.J. 443 (C.M.A.1977), which interprets *Middendorf*, as *requiring* consultation with a lawyer before the government can properly proceed with the lawyerless summary court-martial.[1] If this interpretation of *Booker* is accurate, *United States v. Mathews*, 6 M.J. 357 (C.M.A.1979), would now also require lawyer consultation prior to proceeding under Article 15, Uniform Code of Military Justice, nonjudicial punishment. The time has come to step back and check for warps. I am confident from the language of *Middendorf*, the United States Supreme Court would not hold on constitutional grounds that the service member must be afforded the right to consult with a lawyer prior to his election of whether or not to proceed under Articles 15 or 20, Uniform Code of Military Justice.[2] If such a right exists in the Army, it is regulatory in origin, not constitutional. In my view, the advice of right to counsel printed on Department of the Army Form 2627 is fully adequate and, in the absence of any evidence of the denial of the opportunity to exercise that right, I would find it waived.

WATKINS, Judge, concurring:

My position with respect to the principal issue under review is as set forth in *United States v. Rembert*, 5 M.J. 910 (A.C.M.R. 1978), wherein I expressed the view that a properly completed Record of Punishment Under Article 15, U.C.M.J. (DA Form 2627) satisfies the requirements of *United States v. Booker*, 5 M.J. 238 (C.M.A.1977). Nothing that I have seen since that time, in *United States v. Mathews*,\* or elsewhere, suggests to me that I should alter my stance concerning this matter. Accordingly, I vote to affirm the approved findings and sentence.

---

1. *See United States v. Arvie*, 7 M.J. 768 at n.11 (A.C.M.R.1979) and *United States v. Rembert*, 5 M.J. 910, 912–13 (A.C.M.R.1978) (Fulton, Sr.J., dissenting). Specifically, my brother would hold that any waiver of the right to consult with counsel must itself be established to have been knowing and intelligent. Clearly, what is a right of the individual in this context would be a requirement upon the government. It is this pyramiding of requirements to establish knowing and intelligent waivers that I resist. Indeed, one might next wonder whether a person can ever knowingly and intelligently waive the right to a lawyer without first talking to one.

2. Interestingly, neither the Uniform Code of Military Justice nor the Manual for Courts-Martial, United States, 1969 (Revised edition), extends such rights, and it is only when we reach secretarial regulations that they first appear. Paragraph 3–12, Army Regulation 27–10, creates the right in Article 15 proceedings and, through paragraph 2–5*b* of the same regulation, Department of the Army Pamphlet 27–7 may create such a right in summary courts-martial.

